UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CRIMINAL ACTION NO. 15-10145-RGS

UNITED STATES OF AMERICA

v.

DEMETRIUS WILLIAMS

MEMORANDUM AND ORDER ON
DEFENDANT'S MOTION
FOR COMPASSIONATE RELEASE

December 7, 2020

STEARNS, D.J.

The authority of a trial court to reduce the sentence of a committed prisoner, unlike in the case of a pretrial detainee, is tightly circumscribed. A sentence once imposed may not be modified except to the extent permitted by Rule 35 of the Federal Rules of Criminal Procedure. *See* 18 U.S.C. § 3582(c). However, there is a recently enacted (December 21, 2018) exception. Under 18 U.S.C. § 3582(c)(1)(A), a district court, on a motion by the Director of the Bureau of Prisons or by a defendant who has exhausted his prescribed administrative rights, may order a compassionate reduction of sentence: (1) on a finding of "extraordinary and compelling reasons" warranting such a reduction; or (2) on findings that apply to elderly long-term inmates suffering from terminal or self-debilitating illnesses and who, as a result, are no longer deemed a danger to the safety of any person or the

community.    Demetrius Williams, who is in his mid-30's and who has served less than half of the 151-month sentence imposed by the court in 2017, does not fit the eligibility criteria that apply to the second statutory category of inmate.

In his motion,[1]  Williams asks that his committed sentence be reduced to home confinement because of the threat of infection posed by the COVID-19 virus in a prison setting.    Although Williams claims to be at medical risk, his documented ailment, namely an asthmatic condition, is not uncommonly grave or life-threatening.    The gravamen of his complaint is that prisons and jails, although not FCI-Berlin specifically (where Williams is incarcerated), have suffered outbreaks of COVID-19 and that as a prisoner he runs an elevated risk of an infection living in close quarters with other inmates.    While his concerns are understandable, they are not "extraordinary and compelling."

Williams has an extensive serious and violent criminal record including drug and firearms convictions.    His present sentence stems from

---

[1] Williams's petition for compassionate release was denied by the Warden of FCI-Berlin in July of 2020.    Consequently, the necessary showing of exhaustion of remedies has been satisfied.    *See* Def.'s Mot. at Ex. 1.

his role as a leader in a gang-related drug-dealing conspiracy that terrorized the Columbia Point area of Boston with tentacles reaching as far as Maine. His present sentence stems from his guilty pleas to the distribution of large quantities of cocaine base, cocaine, and heroin as a leader of a racketeering enterprise.   I agree with the government that Williams's release into the community would at present pose a serious threat to public safety.

While I am as concerned as any judge with the impact of COVID-19 on the prison population, unless society is to make the decision that all prisoners should be released because of the pandemic, there must be a means of differentiating those eligible for release from those who are not.   In setting the conditions that justify compassionate release, Congress made its best effort to provide judges with the tools they need to make these difficult and, at times, heart-wrenching decisions.[2]   Williams does not meet any of

_____

[2] Congress, in addition to the quantitative criteria set out in § 3582(c)(1)(A)(ii), directs courts to those set out in the Bail Reform Act and the policy statements of the United States Sentencing Commission.   *See* 18 U.S.C. § 3582(c)(2).   As I have previously noted, I think the late Chief Justice Gants of the Massachusetts Supreme Judicial Court summarized the considerations admirably in reminding us that "in conducting . . . de novo review [of a detention decision], a judge must give careful consideration not only to the risks posed by releasing the defendant −   flight, danger to others or to the community, and likelihood of further criminal acts − but also, during this pandemic, to the risk that the defendant might die or become seriously ill if kept in custody."   *Christie v. Commonwealth*, 484 Mass. 397, 398 (2020).   The Chief Justice's admonition is equally pertinent in

mandated eligibility criteria and, therefore, is not a candidate for compassionate release.

Because I can foresee no circumstances under which Williams could be deemed eligible at present for compassionate release,[3] I see no reason for a hearing on the matter.

### ORDER

For the foregoing reasons, the Motion for Compassionate Release is <u>DENIED</u>.

SO ORDERED.

/s/ Richard G Stearns
UNITED STATES DISTRICT JUDGE

---

weighing the balancing factors that underlie a motion for compassionate release.   Here, I believe that it is the community that bears the greater risk should Williams be prematurely released.

[3] I wish to acknowledge the two letters that Williams has addressed to me personally explaining his efforts to reclaim his life as a productive citizen. The letters reflect a documented effort on Williams's part to better himself and break out of the downward cycle in which he found himself , if only "to do better as a man and as [the] father" of his now 7-year-old daughter.   Dkt #1071-4.   I also note his observation that his time in prison may have saved his life.   I do not doubt the sincerity of Williams's statements or his intentions to become a mentor to other young people in danger of falling into the same trap that ensnared him.   If the present course of prison reform continues, Williams may well be a promising candidate for a second chance. But this is not what the Compassionate Release Program is about.